## CHARLES B. WRIGHT ET AL., APPELLEES, V. LIZZIE PFRIMMER, APPELLANT.

### FILED MARCH 4, 1916. No. 18363.

1. **Deeeds: COVENANTS: RIGHT TO ENFORCE.** Where the owner of a tract of land subdivides it into lots and makes public a general plan of improvement or development and executes deeds to the lots with uniform restrictive covenants pursuant to the general plan, purchasers may enforce such covenants against each other.

2. ———: ———: ———. Purchasers of lots cannot enforce against each other restrictive covenants imposed upon their respective lots in a deed to their common grantor, when such covenants were not part of a general plan of improvement, but were imposed for the benefit of other land retained by the original owner.

3. ———: ———: ENFORCEMENT: BURDEN OF PROOF. In a suit by a prior grantee to enforce a restrictive covenant in the deed of a subsequent grantee from the common grantor, the burden is on plaintiff to prove that such covenant was intended for the benefit of his land.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Reversed and dismissed.*

*Mahoney & Kennedy,* for appellant.

*Warren Switzler* and *H. W. Morrow, contra.*

BARNES, J.

This is a suit to enjoin defendant from using a residence lot in Omaha for rooming and boarding purposes in alleged violation of restrictive covenants in her deed. From a decree granting an injunction, she has appealed.

Plaintiffs are not parties to the conveyance through which defendant acquired title, and their right to an injunction is challenged on the ground that the restrictive covenants do not inure to their benefit. The covenants in question are as follows:

"Subject, however, to　*　*　*　the following restrictions and agreements which shall be considered and construed as covenants running with the land for a period of 25 years from the 17th day of May, A. D. 1909:

"(1)　That for 25 years from the above date, said property shall be used for residence purposes exclusively and there shall only be erected thereon one separate private residence with the necessary stables and other outhouses in connection therewith, the residence herein specified not to include any apartment house, flat or connected house of any description.

"(2)　That any residence erected on said property shall be fronted on Cuming street and the front line thereof shall be placed as nearly as practicable in line with the residence now located on west 50 feet of lot 11, block 12, Bemis Park.

"(3)　That any residence erected on said property shall cost not less than $3,500."

The accompanying map is an aid in understanding the facts:

Wright v. Pfrimmer.

Defendant owns a lot composed of parts of lots 10 and 11, in block 12, Bemis Park, an addition to Omaha. Lots 9, 10 and 11 were originally owned jointly by Mrs. E. W. Nash and her son-in-law, L. F. Crofoot, and were afterwards subdivided into four lots. The grounds of the Methodist Hospital, east of these lots, had been purchased at an earlier date from Mr. Nash without restrictions. Diagonally across the intersection of Cuming and Thirty-eighth streets, Mrs. Nash owned a tract of land having a frontage of 150 feet on Cuming street, where she had resided for many years. Of the four lots mentioned, the one on the east was conveyed to plaintiff Wright on June 27, 1907. The lot adjoining the hospital grounds was conveyed to Frederick L. Smith, December 11, 1906. Sub-

99 Neb. 29

sequently, Mrs. Nash conveyed all of her real estate, for the purpose of management, to the C. B. Nash Company, in which she was the principal stockholder. May 17, 1909, George W. Garloch purchased the other two lots subject to the restrictions contained in defendant's deed, and, after building a house on each, sold the lot adjoining the Wright property to defendant March 15, 1909, and the other to plaintiff Beeman March 5, 1910.

The covenants in the Smith deed were as follows:

"Subject, however, to the following covenants which are hereby expressly made to grantors, their heirs, executors, administrators and assigns, by Frederick L. Smith, for and as binding upon himself, his heirs, executors, administrators and assigns, to wit: (1) That said property shall be used for residence purposes only; (2) that any residence erected thereon shall cost not less than twenty-five hundred dollars ($2,500) and that the front line of same shall stand at least thirty-five (35) feet from the south line of said property; (3) that these covenants shall be considered and construed as covenants running with the land."

The covenants in the Wright deed were as follows:

"Subject to the following restrictions and agreements which shall be considered and construed as covenants running with the land:

"(1) That said property shall be used only for the purpose of erecting thereon one separate, detached private residence. The term residence as herein used shall not include an apartment house, brick flats, or connected or adjoining houses of any description.

"(2) That said residence shall cost, when completed, not less than $4,500.

"(3) That said residence, when erected, shall front south on Cuming street, and the front line thereof shall stand at least thirty feet from the south line of said property."

May the restrictive covenants in defendant's deed be enforced at the suit of plaintiffs, who are not parties to

that deed?   Authorities on this subject are collected in
37 L. R. A. n. s. 12, in a note to *Korn v. Campbell,* 192
N. Y. 490.   In general, such a covenant may be enforced
by another grantee of the common grantor only when it
was made for the benefit of the adjacent land.   When sim-
ilar covenants are inserted in deeds from the common
grantor pursuant to a general plan of improvement or de-
velopment made public by the grantor, each grantee has
such an interest in the restrictive covenants in the other
deeds, in view of the general plan under which he pur-
chased, that he may enforce such covenants against other
grantees.   When a general plan of improvement has not
been published by the grantor, one grantee can enforce the
covenants against another only when they were intended
for the benefit of the adjacent lots.   The intention to give
such right to enforce the covenants must be expressed in
the deeds themselves, or must be evident from the cove-
nants in the deeds when viewed in the light of the sur-
rounding circumstances.   *De Gray v. Monmouth Beach
Club House Co.,* 50 N. J. Eq., 329; *Sailer v. Podolski,* 82 N.
J. Eq. 459; *Hays v. St. Paul M. E. Church,* 196 Ill. 633.

Restrictive covenants being in derogation of the land-
owner's free use of his property, one who claims a right
to enforce such covenants has the burden of proving that
they were made for his benefit.   *McNichol v. Townsend,*
73 N. J. Eq. 276; *Sharp v. Ropes,* 110 Mass. 381.

It is contended that plaintiffs may maintain this action,
and *Roberts v. Scull,* 58 N. J. Eq. 396, is cited as sustain-
ing this contention:  "But this rule, while operative to
enable a subsequent purchaser of land to be benefited by
a restrictive covenant to enforce it against the prior pur-
chaser, who made it, and against his assigns, with notice
of it, does not work inversely to support the claim of a
prior purchaser from the original owner to enforce a re-
striction imposed by the latter upon a lot subsequently
conveyed. *De Gray v. Monmouth Beach Club House Co.,*
50 N. J. Eq. 329.   *   *   *   In order to entitle prior pur-
chasers from a common vendor, or those claiming under

them, to enforce such covenants, it must be shown that they are parts of a general plan adopted for the development and improvement of the property by laying it out in streets and lots, prescribing a uniform building scheme, regulating size and style of houses, or uses to which the buildings may be put. *De Gray v. Monmouth Beach Club House Co., supra.*"

It is also claimed by defendant that plaintiff Beeman, being a subsequent purchaser, is not in a position to enforce the restrictive covenants imposed upon defendant's lot. It should be observed that Garloch, in 1909, purchased the two middle lots from the original owner, who imposed the restrictions sought to be imposed in this action. He sold one lot to defendant in 1909, and the other lot to plaintiff Beeman in 1910. The question is: May Beeman enforce the covenant imposed upon Garloch, and the two middle lots in the original deed to Garloch, by the original owners of the four lots? There are not many cases which bear directly on this subject, but the weight of authority denies Beeman's right to sue. In the note to *Korn v. Campbell, supra* (p. 22), the annotator says: "Ordinarily, where the owner of a tract of land sells part of it subject to restrictions, it is a purchaser of part of the land retained who seeks to enforce the restrictions; but where the land sold burdened with the restriction is afterwards divided up, and passes into the hands of different purchasers, the question has been raised whether such purchasers from the original vendee can enforce, as between themselves, the restrictions imposed upon their grantor's land. The courts are not in harmony on this question, but in this class of cases it would seem that the rights of portions of the servient estate to enforce the restriction would be exceedingly doubtful, since the restriction was imposed for the benefit of a different tract of land; that is, the land retained by the grantor—the dominant estate."

The only case cited holding that the action can be maintained is *Winfield v. Henning*, 21 N. J. Eq. 188, where

it is said: "This view is supported by the dictum of Lord Romilly, in a case heard before him at the Rolls, in 1866, *Western v. Macdermot,* 1 Eq. Cas. L. R. (Eng.) *499; and by a decision of the supreme court of Rhode Island, *Greene v. Creighton,* 7 R. I. 1." The Rhode Island decision is not authority for the rule.

The supreme court of Massachusetts, however, has held that such an action cannot be maintained. *Jewell v. Lee,* 14 Allen (Mass.) 145. In that case, Bigelow, C. J., said: "The main ground on which the plaintiff rests his claim to equitable relief is that the condition annexed by the original owner and grantor to his grant of the entire tract of land, of which the plaintiff and defendant now by mesne conveyances severally hold distinct parcels, constitutes a perpetual restriction on the use of the part now owned by the defendant, in the nature of a servitude or easement, on the observance of which the plaintiff, as the owner of the other part of the original parcel, has a right to insist. It is doubtless true that such may be the effect of a condition in a class of cases where it is apparent that the condition was annexed to a grant for the purpose of improving or rendering more beneficial and advantageous the occupation of the estate granted, when it should become divided into separate parcels and be owned by different individuals, or when the manifest object of a restriction on the use of an estate was to benefit another tract adjoining to or in the vicinity of the land on which the restriction is imposed. But, in the absence of any fact or circumstance to show such purpose or object, a condition annexed to a grant can have no effect or operation either at law or in equity beyond that which attaches to it by the rules of the common law. The benefit of the condition would in such cases enure only to the grantor and his heirs or devisees, and the burden of it would rest on the estate to which it was annexed, and on those who hold it or any part of it subject to the condition. Indeed, no restriction on the use of land and no condition annexed to its possession and enjoyment can be for the benefit of

the grantee or those holding his estate in the granted premises, unless it be as a consideration of some restriction on other land, which may operate as an advantage or convenience in the use and occupation of the granted premises. Inasmuch as a grantee can restrict the use of land of which he is the owner according to his own will and pleasure, it is clear that he can derive no benefit from a restriction or condition as such imposed on its use or enjoyment by any prior grantor."

The grantor in this case did not make public a general plan of improvement of the lots sold. The covenants in the deeds to the lots are not uniform. In the lot first sold, and the one farthest from the Nash residence, there is no express prohibition of flats or apartments as in the other deeds. In the deed to the two middle lots the covenants are limited to a 25-year period, after which time business buildings are not prohibited on those two lots. The grantor retained land near the property sold. If the latter were devoted to business uses or to the erection of apartment houses or hospitals, it would affect the use and enjoyment of her residence property. The insertion of restrictive covenants in all the deeds, while some evidence of an intent to develop the lots under a general plan, is consistent with a purpose of protecting the property retained by the grantor as a residence. There is nothing in the deeds, outside of the fact that covenants were inserted in all of them, that indicates that they were inserted for the benefit of other grantees. There is no covenant to insert such restrictions in subsequent deeds to the adjoining lots. Defendant is bound by the knowledge imparted to her by the language of the deed, and the surrounding circumstances, and not by the secret intentions of the grantor or what was orally promised to the other grantees. *Hays v. St. Paul M. E. Church, supra.*

We are of opinion that plaintiffs have not met the burden of proving that the covenants in the deeds from Mrs. Nash were not made exclusively for her benefit, but were made for the benefit of other grantees of adjoining land.

It is insistd that, as to Beeman, he can enforce the covenants under the rule that, where the owner of two lots inserts restrictive covenants in a deed conveying one of the lots, such covenants may be enforced by the grantor or grantee of the remaining lot. That rule is not applicable to the facts in this case. While the deed to defendant from Garloch, the owner of the two middle lots, did contain the restrictive covenants, they were merely the covenants inserted by his grantor. While the authorities on the questions presented are not entirely in harmony, we feel constrained to follow what seems to be the rule, above stated.

We are also of the opinion that plaintiffs have failed to show such a use of defendant's premises as amounts to a violation of the covenant contained in her deed.

The decree of the district court is therefore reversed, and the action is dismissed.

REVERSED AND DISMISSED.

MORRISSEY, C. J., and LETTON and SEDGWICK, JJ., dissenting.

Independent of the covenants in the Nash deed, plaintiff Beeman is entitled to the relief sought. Garloch was the owner of two lots. He sold one of them with a restrictive covenant in the deed for the benefit of the lot which he retained. About ten months afterwards he sold the latter lot with a like covenant to plaintiff Beeman. The rule is that where the common grantor of two adjoining lots sells one and retains the other, and inserts in the deed of the one sold a covenant restricting the manner in which buildings to be erected on the lot sold may be used or where or how they shall be built, which covenant is plainly for the benefit of the lot which he retains, and he afterwards sells the latter lot, the covenant passes to the purchaser of the same, and he may enforce it against the owner of the other lot. The majority opinion holds that the restriction in Garloch's deed to defendant cannot be enforced by Beeman because that restriction was the same

in substance as in Garloch's deed from Nash.   No reason
is given for this statement, and we apprehend that no
reason can be given for holding that Garloch could not
enforce the same restriction on the property deeded by him
that was in the deed under which he himself took title.
Repeating a quotation in the majority opinion from *Jewell*
*v. Lee*, 14 Allen (Mass.) 145, "inasmuch as a grantee can
restrict the use of land of which he is the owner accord-
ing to his own will and pleasure," the restriction in Gar-
loch's deed to defendant would be enforceable by either
Garloch or his subsequent grantee.