JOSEPH J. CIMINO, Plaintiff-Appellee, *v.* CONRAD DILL *et al.*, Defendants-Appellants.

First District (5th Division)   No. 81—2517

Opinion filed August 20, 1982.

James N. Vail, of Chicago, for appellants.

William Biederman, of Marks, Katz, Randall, Weinberg & Blatt, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Joseph Cimino filed an action seeking a declaration that various restrictive covenants did not preclude him from constructing and operating medical offices on property he purchased in an Elk Grove Village subdivision. On remand from a prior appeal (*Cimino v. Dill* (1980), 92 Ill. App. 3d 345 (*"Cimino I"*)), the trial court construed the applicable covenant as permitting the proposed use, and defendants Bud Krueger and Charles Christian (the owners of single-family residences in the subdivision) appeal from a judgment entered in favor of plaintiff. We hold that the trial court properly construed

the applicable covenant, and we affirm the judgment. The following facts are material to our decision.

The Catholic Bishop of Chicago, as a corporation sole, took conveyance of Lot 4675 in the subdivision subject to a recorded restrictive covenant (hereinafter referred to as the "original document") which provided that,

> "All lots shall be used for single family residence purposes except *** Lot 4675 *** shall be designated as a Church Site ***. It is understood that, with regard to Lot *** 4675 *** the owner or owners in fee simple of said lot, shall at the time of subdivision thereof, be the sole parties who shall have the right to determine whether *** Lot 4675, as subdivided, shall be used for a church site ***."

After Lot 4675 was conveyed to the Catholic Bishop, the developer recorded a second document which provided that Lot 4675 could only be used for single-family residences if the Catholic Bishop decided not to use the entire lot for a church. Subsequently, the Catholic Bishop decided that the entire lot would not be needed for church purposes, and he conveyed a subdivided portion of the property to plaintiff.

In *Cimino I* we held that the second document was not binding on the Catholic Bishop because it had not been recorded before the property was conveyed to him. As we explained, "The second document was merely a unilateral after-the-fact declaration of [the developer's] intent in recording the original restrictions and to the extent that it expands or varies the earlier restrictions would not restrict the Catholic Bishop's use of the property." 92 Ill. App. 3d 345, 349.

We further held that the original document is ambiguous (92 Ill. App. 3d 345, 348) because "[f]rom an examination of the original document, [the developer's] intent is unclear as to whether Lot 4675 was restricted to use for single-family residences unless the owner or owners determined to make use of its optional designation as a church site or whether the lot would be unrestricted in use should the owner determine not to use it as a church site." 92 Ill. App. 3d 345, 349.

At an evidentiary hearing after remand from *Cimino I*, defendants presented evidence that the Catholic Bishop was notified of the second document after the property had been conveyed to him. In this appeal, defendants initially assert that the Catholic Bishop and his assigns are bound by the second document because he "took possession of the subject property with full knowledge of the restrictions contained in the two documents at issue and thereby acquiesced in their enforceability."

Defendants also assert that the trial court improperly "entered a judgment that went beyond the pleadings." The basis for this argument is the fact that the trial court construed the original document as permitting the proposed development, but plaintiff's amended complaint only prayed for a declaration that both documents are "inapplicable and unenforceable."

The initial argument overlooks the fact that, in the absence of a subsequent agreement between the Catholic Bishop and the developer concerning the second document, the Catholic Bishop was only bound by the restrictions which were in his deed, or in the record chain of title, when the property was conveyed to him.

"A covenant is an agreement between the parties to do or not to do a particular act." (*Leverich v. Roy* (1948), 402 Ill. 71, 73.) In other words, there must be a meeting of the minds between the covenanting parties. But, "A grantee who accepts a deed with a covenant imposing duties upon him is as much bound by such [a] covenant as though he had signed and sealed the deed." (*Druecker v. McLaughlin* (1908), 235 Ill. 367, 374.) The grantee in such a case is held to have impliedly assented to being bound by covenants which were in his deed, or in the record chain of title for the property, at the time of conveyance. *Wiegman v. Kusel* (1915), 270 Ill. 520, 523.

The second restrictive covenant in the present case had not been drafted or recorded when Lot 4675 was conveyed to the Catholic Bishop, and the Catholic Bishop did not enter into a subsequent contract or agreement which would have bound him or his assigns to the provisions of this document. The fact that the Bishop eventually became aware of the second document does not mean that there was a binding agreement (*i.e.*, a meeting of the minds and a bargained-for exchange of consideration) between the Catholic Bishop and the developer concerning the second document.

Although the developer may have subjectively intended to restrict the Catholic Bishop's use of Lot 4675, "The intention [to impose an enforceable restrictive covenant] is to be ascertained as in other cases,—not by learning some secret or unexpressed intention in the mind of [the grantor], but from the language of the deed itself, considered in connection with the circumstances existing at the time it was executed. (*Hutchinson v. Ulrich*, 145 Ill. 336.) The [grantee] is bound by what it had notice of, but not by secret intentions of [the grantor]." *Hays v. St. Paul Methodist Episcopal Church* (1902), 196 Ill. 633, 636.

The proper focus in the present case is on the objectively manifested intent of the grantor at the time Lot 4675 was conveyed to the

Catholic Bishop. Accordingly, the dispositive question involves the proper interpretation of the covenant which was in the record chain of title at the time the property was conveyed to the Catholic Bishop.

█ Restrictions on the use of property held in fee simple are disfavored, although they are generally enforced if the parties have clearly manifested their intent. (*Eckhart v. Irons* (1889), 128 Ill. 568, 581.) But, "It is a well-settled rule that in construing a deed containing restrictions as to the use of property conveyed in fee, all doubts will be resolved against the restrictions and in favor of the free use of the property." (*Newton v. Village of Glen Ellyn* (1940), 374 Ill. 50, 56.) See also *Boylston v. Homes* (1916), 276 Ill. 279, 285-86; *Loomis v. Collins* (1916), 272 Ill. 221, 232; accord, 7 Thompson, Real Property sec. 3160, at 109 (1962 replacement) ("Where the words of a restriction are equally capable of two or more different constructions, that construction will be adopted which least restricts the free use of the land.").

The rule which requires courts to construe ambiguous land restrictions in favor of permitting unfettered use of property is grounded on the public policy which favors free enterprise.

"In this country real estate is an article of commerce, the uses to which it should be devoted are constantly changing as the business of the country increases, and as its new wants are developed; hence it is contrary to the wellrecognized business policy of the country to tie up real estate where the fee is conveyed, with restrictions and prohibitions as to its use, and hence, in the construction of deeds containing restrictions and prohibitions as to the use of property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property, and against restrictions." *Hutchinson v. Ulrich* (1893), 145 Ill. 336, 342.

We previously held, in *Cimino I*, that the restrictive covenant which runs with Lot 4675 is ambiguous because it is not clear whether the portion of the lot not used for a church could be used for any purpose, or whether it could only be used for single-family residences. The rule of strict construction which applies to covenants in deeds necessarily applies to limitations imposed by other instruments in the record chain of title, and the trial court properly construed the ambiguous restriction contained in the original document in favor of unfettered use of the property.

The second argument raised in this appeal is that the trial court "entered a judgment that went beyond the pleadings." The amended complaint alleged that "The restrictions contained in the instrument

should be construed strongly against the validity of the restrictions, with all doubts and ambiguities resolved in favor of natural rights and free use and alienation of the property. The ambiguities contained in the instrument are such as to render the purported restrictions inapplicable and unenforceable." Plaintiff therefore prayed for a declaration that the purported restrictions on the proposed use of his property are "inapplicable and unenforceable."

■■ The second document was unenforceable against plaintiff because it was recorded outside the chain of title. And the trial court correctly held that the broad construction of the original document which was urged by the defendants is "inapplicable" because that document is ambiguous. We therefore find no merit in the argument that the trial court "entered a judgment that went beyond the pleadings."

Based on the preceding reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J. and MEJDA, J., concur.